Case number 18-5222. Arturo C. Porzecanski, appellant, v. Alex Michael Azar, 2nd, Secretary, United States Department of Health and Human Services. Ms. Wilberton for the appellant. Ms. Lilly for the appellee. Ms. Wilberton for the appellee. Ms. Wilberton. Good morning. Thank you and good morning. May it please the Court, my name is Caroline Wilberton. I am appearing on behalf of the appellant Arturo Porzecanski. This appeal presents a straightforward question about the extent of an Article III court's remedial power. Does that power encompass the authority to issue equitable relief to give meaningful effect to the district court's decision? And the answer is also straightforward, yes. The Supreme Court held long ago in Califano v. Yamasaki that the judicial review provision of the Social Security Act, which the Medicare statute incorporates, does not limit federal court's authority to issue equitable remedies. It remains a general rule, does it not, that where there is an adequate remedy provided in the law, equities stand as stated. We do not issue injunctions to carry out what the law requires, do we? The Supreme Court in Califano v. Yamasaki, yes, addressed that issue and held that Section 205G, which is the operative provision for judicial review here, does not preclude equitable remedies even though there is an adequate remedy that's otherwise available. It's not mutually exclusive that an additional available remedy would preclude a district court from entering an injunction. And we submit here that the error that the district court made was in concluding that it lacked any power to consider an injunction at all. And we certainly agree that it might be appropriate for the district court to consider in the first instance whether there are alternative remedies, but none of that — Well, the remedy is there. It's not an equation. What if there is a remedy? Your Honor, we would further submit, yes, there's a remedy. It's not adequate here. Mr. Porzekanski has been channeling the same issue through the — Now, he's won four reviews under that — present the statutory remedy, right? He has, yes. Yet the contractor that the Secretary employs continues to deny every claim that he files, both before the district court's decision and after the district court's decision. Since the relevant time here, he's won his review. So his remedy is working, isn't it? Your Honor, we submit, no, it's not working. It's not? It's not working. What has he lost? I'm sorry? He's won every one of them. If it's not working, it's doing a pretty good job of not working in his favor, then. The reason it's not working is because there is continued uncertainty as to whether Medicare will cover this life-saving treatment. And that uncertainty has a direct impact on his ability to retire. He would like to retire. He hasn't — Well, you see, applied with the — there is procedures, Your Honor, for requesting a national determination. Yes. Has he made such an application? He has not, because — He has not. He's asking us to use an injunction to accomplish something he presumably could accomplish by following a remedy that the statute provides. Your Honor, we submit the national coverage determination would not be appropriate here. The national coverage determination, as described by the Secretary in a recent Federal Register notice, is akin to the FDA's approval of a new drug. It's a very lengthy, burdensome process. And the patient population who has the condition that Mr. Korsakansky has is very small. It seems highly unlikely that HHS would find it appropriate to issue a national coverage determination for this. And in any event, it's not an exclusive avenue. Excuse me. I'm still on the last case. What would the injunction look like if we tell the district court to issue an injunction in his favor here? What are we telling them to enjoin? Well, Your Honor, we're asking for an order that the district court enter an appropriate injunction. And I'm asking you what the appropriate — Yes, we will argue that the court should enjoin the agency from continuing to imply the invalidated conclusions that the district court found were inconsistent with the Medicare statute and rules. And the problem here is that the agency got this ruling from the district court and has completely disregarded it. The agency continues to deny every single claim. But it's not the agency that's denying him, is it? It's the agency's contractor. The contractor is denying. Yes. Then he gets a review, and he's wanting a review each time, right? That is correct, Your Honor. Okay. On that, though, I want to get back to the point I made about the uncertainty that has prevented Mr. Korsakansky from retiring. Because every claim is denied at the first level, the provider that gives him the treatment that he needs two times every four weeks would not continue to give him the treatment without some assurance that Medicare will cover it. They would require Mr. Korsakansky to issue or to give a personal guarantee of payment. And the way that things have gone, yes, all of his claims have been overturned, but we don't know that that will continue. And what's even more concerning here is that if the provider stops the treatments because Mr. Korsakansky has a limited amount of savings, these treatments cost $30,000 each time.  At some point, the money will run out, and if the provider does not have assurance that Medicare will pay for the treatments, it will stop providing them. If that happens, it won't matter that Mr. Korsakansky has available to him multiple administrative remedies. He could pursue a national cover determination. He could try again for a local cover determination. He could pursue these individual denials administratively. None of that will matter at all because, in all likelihood, he would not live to be able to pursue the process. If the treatments stop, he probably will die. So that's why the available administrative remedies are not adequate here. And that's why it is so important that this court recognize the fundamental power of an Article III court to issue injunctive relief when necessary. The Supreme Court recognized in Califano v. Yamasaki that injunctive relief can be essential to a 205G case. We also have Ringer and Illinois Counsel post-Yamasaki, which pretty strongly stand for the proposition that each individual claim for benefits needs to be presented and exhausted. Yes, Your Honor. And we are not arguing anything different. All we are asking for is what the Fifth Circuit and the Ninth Circuit recently recognized that an Article III court can issue. But those are different. Those are regulations that are reviewed under a different judicial review provision, which specifically carves out, I think it's 405G, which is the basis for all of these channeling requirements. So those cases don't help you. Yes, there are differences, Your Honor, but an agency can issue binding determinations either through rulemaking or adjudication. And the fact that we have an adjudication here doesn't, isn't, we submit a distinction with a meaningful difference because It is, though, because the adjudication gets reviewed through the provisions that impose these channeling requirements, whereas the regs get reviewed under an entirely different scheme. Yes, Your Honor. And those issues were already reviewed through the channeling process. Mr. Korsakansky presented to the agency. Well, the issue may have been reviewed, but the thing that gets channeled is the decision of the secretary. And the decision of the secretary here is the denial of benefits on whatever the date was, December 16, 2014, right? Yes. That's the decision that's under review. It may be that there are later decisions that will present overlapping or even identical legal issues, but they would be subsequent agency action. Yes, yes. And we're not asking for any ruling from the district court that the secretary must approve each of Mr. Korsakansky's claims. We recognize that for an individual claim, he would have to satisfy all the criteria to establish coverage. But you are saying that some aspects of that subsequent decision, namely the overlapping legal questions, don't need to be presented and exhausted. That's correct, Your Honor. And that's hard to square with Ringer and Illinois counsel. The reason that we submit that they can't be squared is because those questions have already been decided as to Mr. Korsakansky. There's the principle of mutual defensive collateral estoppel that should, if it does as a matter of law, preclude the agency from revisiting those issues that the district court has already decided as to Mr. Korsakansky. It can't relitigate those same questions that have already been decided. Maybe yes, maybe no. If you were in court under restatement principles, you'd have a pretty good argument for preclusion, issue preclusion here. But that's normally an argument you would make in the second administrative proceeding. Perhaps, perhaps. But our point is that here, the agency has done absolutely nothing as a consequence of the district court's ruling. It didn't even pay the claim that the district court overturned until we pointed that out in our briefing to this court. And its contractor, as I said, continues to deny all of the claims on the same grounds, Mr. Korsakansky. And he keeps losing when he appeals that, when he's petitioned to review those decisions. Yes, but certainly the Medicare statute doesn't require him to repeatedly present the same issue that's already been decided. There must be some meaning that comes from the district court's ruling. Well, obviously there is, because he's still winning each of the subsequent claims. That's the normal way in which precedent comes into effect, is it's applied in the future cases. You don't come in and get an injunction that says, hereafter the prior to fact, the agencies or whatever, will follow this precedent we just made. Normally the precedent is tested or carried out by further cases in which the claiming party wins. Yes, but the problem is here that the agency is not carrying out, the agency has wholly disregarded the district court's ruling. You seem to be missing, we're passing in the nuts. Obviously they haven't failed to because he's winning each of the claims since then, right? No, Your Honor, at the initial level he's always denied on the same grounds. And then he's won each of them when he petitioned for review. Yes. He didn't pass the contractor and went up in the agency. He won each time, right? He has, yes. And the problem is that the agency has done nothing to instruct the contractor to adhere to the district court's ruling. So are you asking us for an injunction for the administrator to tell the contractor to follow this new regime, correct regime? Yes, we will. I'm asking what the injunction looks like. Yes, we will. It seems like a strange injunction that enjoins what happens as far as the use of precedent in future proceedings. I haven't seen one like that. You haven't asked for an injunction to get the administrator to tell the contractor to change his definition, which he may have done by now for all we really know. Your Honor. There has been some time lapse since before that he won. There's been a lot of time and the agency has done absolutely nothing. Has the contractor changed its documentation? Yes. It has, hasn't it? Yes. I mean, this is not in the record, so we're talking off the record, but they've actually changed that lowest obtainable into a lowest effective, right? It's still unclear what that means. They did make that change, did they not? Yes, they did, Your Honor. I understand it's not in the record, but we both know that they've done that. Yes, Your Honor. So we have no reason to believe that that will not change the result at the contractor level, do we? Unfortunately, we have every reason to believe it will not, because in that same determination, the contractor explicitly referenced the legal documentation that Mr. Persikansky had submitted, which was a copy of the district court's ruling, and the contractor said, we do not take any notice of that. The contractor continues to act like it never happened, and that's the problem. That's why it's- Has there been a review since they changed their terminology? I'm sorry, Your Honor? Has there been a review since they made that change in terminology? He won four before the change, I think. Correct. I think that's right. There have been no more reviews since then, so we don't know if he's going to have to go to the second level or not, do we? Under the lowest effective. The most effective rather than lowest containment. Right. Yes, he has. Yes, he has. And I have copies, because the effective date of the revised local coverage determination was September of 2018. Every claim that he has submitted and has been decided has gotten the same decision denied, citing the same codes, that it's not covered by Medicare, it's not medically necessary, as the decision that led to the district court ruling. The agency has done nothing to instruct the contractor to adhere to the district court's ruling, and the contractor hasn't. And that's why, as the Supreme Court said in Califano v. Yamasaki, an injunction can be essential. So the effective date of the latest amendment is services performed after August 22, 2019. It's pretty recent. So there's already been a treatment performed after that date that's produced a denial of benefits by the contractor? Your Honor, what I'm speaking to is the local coverage determination that the contractor declined to reconsider. And that one was if — That was the first one, right? That was the one of — I don't have the language in front of me, but there were two revisions, right? Uh-huh. The counsel may not be aware of the second revision. Your Honor — Nobody's officially told us about it yet, I don't think. The filing that the government made last — yesterday afternoon is dated August 16, 2019. That is a denial of Mr. Porzekanski's request for reconsideration. To reconsider the first local coverage determination. And I'm sorry, Judge Santel may be right. I'm sorry if we're sandbagging you on this, but I have in front of me a revised local coverage determination. Mm-hmm. Yeah, effective in August. And it refers to the prior language of the lowest dose obtainable. It now comes out with the lowest dose, lowest effective dose. Right. And claims that that's a clarification, which beggars belief, since obtainable and effective don't mean anywhere near the same thing in the English language. But I'm not sure that we've been properly informed of everything that's going on in this case. I'm not sure that you have. Well, yes, Your Honor, if you'll permit me just to clarify, the revised local coverage determination, that was the subject of this reconsideration request? Was the prior one. Yes, there have been two. There was the one that came before the December 2014 claim determination that was the subject of the district court. So that did not address Mr. Porzekanski's condition at all, and that was a basis for the agency's denial of coverage. So it was overturned by the district court. Subsequent to that, Mr. Porzekanski requested a new local coverage determination or revision that was issued in 2000, I think in March 2018. And that has the restriction to the lowest dosage obtainable. Right. Then in September of 2018, Mr. Porzekanski requested reconsideration of that second local coverage determination based on the district court's decision and the. Sorry, you're calling that the second? The second local. And I'm talking about a third. Well, Your Honor, if I might ask the third, you mean the letter that the government submitted yesterday? No. I'm sorry. I mean, a revised local coverage determination by this contractor effective August 22, 2019, which changes the phrase lowest. What's the old word, Dave? Judges can tell. Lowest obtainable? Lowest obtainable. Into lowest effective. Thank you, Your Honor. I've confirmed we have not seen that. The government has not given us notice of that. So let me try it this way, and I apologize if we're springing this on you. But let me try it this way. All you're asking for is an injunction that would prevent relitigation of issues that Judge Friedrich decided in your favor. Yes, Your Honor. Okay. As I read her opinion, all of those issues were global in the sense that they had nothing to do with Mr. Porzykonski's condition. They involved the question whether his treatment was a drug under the Medicare statutes and whether the district court confused Medicaid and Medicare statutes, right? Yes. And under — so all she did was reject the claim that this treatment is categorically unavailable for this kind of disease, right? I'm sorry. Let me make sure I understand. The district judge rejected the claim — of the circumstances for this disease. Your Honor, no. She concluded that she did not have power to issue any form of legislation. But her ruling on the merits is that — let's just say for shorthand — the district court confused Medicare and Medicaid standards. That was part of her opinion, yes. Okay. So all that does — that, as you've said on the merits, that doesn't give your client an entitlement to any payment on any specific claim, because you still have a lot of case-specific issues about the dosage and the documentation and all of that, right? Correct. Okay. So the district court — all the district court has said is that this kind of treatment can be available. And the contractor now, on two or three occasions, has issued a coverage determination saying this kind of treatment can be available. And it seems like your current fight with them is over the details of lowest obtainable dose, lowest effective dose. Your disagreement is over much narrower questions than what you won on in the prior case. Your Honor, I would say our primary dispute is that all of his claims are still denied. And then as to the specifics of the local coverage determination, how that bears on whether an injunction should issue at all, all of that really is appropriate for the district court in the first instance to have the ability to explore these questions. What's this recent local coverage determination that we don't even know about? And how does that factor into the equities? All of that would be appropriately hashed out when the district court recognizes it has the power to hash that out, and then subject to the court's review. We never officially got it either. I'm not quite sure how we got it, but there is a change that's effective August 22nd. It does change that language from the lowest obtainable dose to the lowest effective dose. My understanding is it was filed as an exhibit in the separate case before Judge Sullivan on the challenging, your client's challenge to the coverage determination. Your Honor, we are counsel of record in that case, and I am not aware of that either. And I would just point out that because of all of these moving parts, it's really appropriate for the district court to consider the full package in the first instance because it clearly has power to do so under Califano v. Yamasaki, under the Administrative Procedure Act, the other authorities that we've cited in our papers. And once the court ---- The letter we received yesterday, dated September 4th from DOJ, shows a copy to all counsel. Yes, Your Honor. So are you saying you haven't seen this? Yes, Your Honor. We do have this one. This is the denial ---- No, it attaches. Yes. Yes, it attaches exactly what we're talking about. No, Your Honor, I'm sorry. It attaches to August 16th, 2019 CMS letter involving Novitas. Yes, that's the denial of reconsideration. But what I am just learning is that subsequent to this August 16th denial of reconsideration, there is a subsequent local coverage determination issue. Okay. And I guess to me the upshot of this is that it's not even clear that the issues in the later cases are the same ones that you won on in the earlier case, which cuts against you. I'm sorry, Your Honor. You mean the case we've got before Judge Sullivan? What's being litigated in all these later denials are issues about what's a lowest obtainable dose or effective dose. And in any event, all of that is unclear. So why are we reaching out either to give you an injunction on an undisputed point or to start mucking around in details that haven't been ironed out with the agency? Your Honor, the agency, when it denies Mr. Porzecanski's claim, it issues a form and it has codes for the reason that your claim is denied, like A, B, C, D. And that's the only explanation he gets. So we don't know if it was because of this lowest dose obtainable or some other reason. It's kind of a black box. And so what we are pretty confident of is that the contractor pays no heed to the district court's determination because it's the same contractor who just issued this letter that the DOJ filed yesterday that attaches the denied reconsideration. And on the second page at the bottom, as I mentioned earlier, it says that we're not going to pay any attention to the district court's ruling. It's like it never happened. I'm trying to figure out if the government is aware of this document that mysteriously appeared yesterday. I guess it came in from the other case. And if they did not file it like they did the first 38 days, why they didn't? We're sandbagging you, but I think we feel at least – I don't think Judy Henderson knew about it until she heard us talking about it this morning, and I didn't know about it until yesterday. It may be a very important change that's been made by the contractor that the government lawyers may not know about. Yes, Your Honor, it may well be. And we would submit that because the district court has the power to consider whether an injunction it should issue and, on the flip side, whether it's not appropriate for an injunction to issue, this matter should be remanded so the district court can consider all of these points and flesh them out fully. And then present, if there's a lingering issue, the matter to this court for review based on a complete record. Any more questions? All right, thank you. We'll give you a couple minutes in response. Thank you. Ms. Lilly? Ms. Lilly? Good morning. Good morning. Can you address first what seems to be a missing document? Yes, as I understand it from this discussion that there may be a third local coverage determination. That is not something that I have seen. And you're not aware of it either? I am not personally aware of it. It does, from the way it has been described by the court, it sounds consistent with the letter that we filed yesterday, which is Judge Henderson. It's not the same thing as what you filed in your letter yesterday. It is not, as described by you. What we filed yesterday that had come to our attention the day previous was a clarification of what I'll describe as the revised local coverage determination. That would be, if there are three, the second. In that letter, the contractor communicated with the plaintiff that the contractor had received a request for reconsideration of that local coverage determination. And then at the end of that letter, the contractor makes a statement that if you have satisfied the criteria of the local coverage determination, and it suggests that he has, that claims properly submitted represent coverable services under the local coverage determination would not be denied solely on the basis of the local coverage determination. The discussion around the dosage clarification in this third local coverage determination is consistent with the discussion in the letter, and so the two may or may not be related. But I do not have the local coverage determination at this time. If I may take a step back to explain why the statutory scheme, the claim-by-claim adjudication on the medical record for any individual treatment is not set up for, or is not the appropriate venue for the type of injunction that plaintiff has requested. It's because, as your honors understand, the Medicare system requires presentation of the medical records, the treatment performed, the patient's condition, and an injunction that would require, that would make that rigid into the future, does not take into account the possibility that the medical science would change, that plaintiff's condition would change, and that is the reason why the Medicare system is set up to adjudicate claims claim-by-claim. There's no indication in the record that subsequent denials have been on the basis of any errors that the district court pointed out in its opinion, and there are many reasons that a claim might be initially denied, but then upon the presentation of additional medical records and information, that they might be approved by the same contractor. But the threshold legal issues that Judge Friedrich decided in favor of Mr. Porzekanski wouldn't change from case to case, right? I'm not sure that that's the case. I think the statutory phrase is drug or biologic. It either is or it isn't, and that's not going to change from treatment to treatment. But the statutory criterion are whether it's reasonable and necessary, and that is a medical determination based on the state of the treatment options available, the state of the medical understanding of plaintiff's condition, of his own health. So those things change, which is why in adjudicating the particular claim, the only information before the court is about the particular treatment and the state of both medicine and the patient at that time. It's not a system designed to make a determination for all future claims, assuming no changes, because that's precisely what the system is set up to, is for the state of both the patient and the medicine at that time. If the court has no further questions, we'll rest on our briefs. All right. Thank you. Why don't you take two minutes? Hi. Thank you. Yes, just a few last points. So the district court ruled here that this very treatment for Mr. Porosikansky is both a Medicare-covered benefit and medically necessary under the Medicare statute rules, the Secretary's guidelines. The problem is that the ALJs and the contractor don't follow it and don't follow that ruling. And in fact, under the agency's own rules, they're not required to follow that ruling. They treat every case as anew. But that leaves Mr. Porosikansky in this horrible position, as I said, that he can't retire, because even though all of his claims to date have been ultimately decided in his favor, that doesn't mean that his provider is going to have the certainty that it needs to pay for his treatments going forward without that personal guarantee of Mr. Porosikansky. And because each claim is decided anew and the agency doesn't feel bound by any prior determinations of either its own administrative law judges or even the district court, there's no reason to believe that going forward the claims will not all of a sudden be denied. If that happens, Mr. Porosikansky, as I said, is not a billionaire. These are very expensive treatments that he absolutely must have in order to continue to live. The National Institutes of Health, the Secretary's own agency, has made that clear, yet the agency has done nothing to respond to the district court's ruling. And that's why we are before your honors, and we ask that the court issue an order recognizing that the district court committed legal error when it concluded that it lacked the power to issue injunctive relief and to remand for a proper consideration of whether equitable relief is warranted. Thank you. Thank you. Before you leave, I apologize again for sandbagging you. I assumed incorrectly that you had the same document I did, and apparently neither you nor the government counsel was made a burden to what the contractor had done on that. Yes. I'm sorry it happened, but it's not our fault it would have been. Thank you for that, Your Honor. Yes. All right.
judges: Henderson, Katsas, Sentelle